ELLISON et al., Appellants, *v.* BARKER et al.,
RESPONDENTS.

[Submitted February 21, 1893.   Decided February 12, 1894.]

Sales of Personalty—*Fraudulent representations.*—A finding that goods were
not obtained upon a fraudulent statement as to the vendee's financial con-
dition, is supported by evidence that shortly prior to the sale the vendor had,
after examining the vendee's financial condition, agreed to compromise an
existing indebtedness at fifty cents on the dollar, and to extend future credit,
which compromise was finally effected at the time of making the statement,
and purchasing the goods in controversy.

*Appeal from First Judicial District, Lewis and Clarke County.*

ACTION for claim and delivery.   The cause was tried before
BUCK, J.   Defendant had judgment below.   Affirmed.

*T. J. Walsh,* for Appellants.

Two important allegations of the complaint are left wholly
undenied, namely, that at the time the representations were
made Barker was insolvent, and that he knew it.   The inves-
tigation is, therefore, narrowed to two inquiries, Did Barker
make the representations, and did plaintiffs rely on them?
The evidence admits the making of the representations, so that
the only real question is as to whether plaintiffs relied on them.
In the consideration of this proposition it should be remem-
bered that though this is a fact to be proven by the plaintiffs,
yet on proof that material representations were made, and that
they were false, a presumption arises that they were relied
upon, and the burden falls on the defendant to show that they
were not.   (Benjamin on Sales, 556; *Fishback* v. *Miller,* 15
Nev. 428–43; Kerr on Fraud and Mistake, 75; *Holbrook* v.
*Burt,* 22 Pick. 546–52; Benjamin on Sales, 677; *Redgrave* v.
*Hurd,* L. R., 20 Ch. Div. 1–24.)   In addition to the presump-
tion afforded by the law, the testimony of Rodman B. Ellison
is direct and positive that it was on his faith in the representa-
tions that he agreed to let Barker have the goods, that he relied
on the truth of the same, and that the goods would not have
been delivered if the statement containing the representations
had not been executed.   The question of whether plaintiffs
relied upon the representations made to them is a question of

the state of their minds, and manifestly their positive assertion as to such a matter can only be affected by the most convincing circumstances. Conceding that the statement was not made until the day following the compromise, and that on the latter day they were willing to let the goods go without a statement, plaintiffs still had a perfect right to change their minds at any time before the delivery of the goods, and to refuse to let them go unless they had further assurance of defendant's ability to pay—being responsible, of course, for any damages he might suffer, if plaintiffs had contracted with him to deliver the goods. (*Nebraska City* v. *Nebraska Hydraulic etc. Co.*, 9 Neb. 339; *Clark* v. *Marsiglia*, 1 Denio, 317; 43 Am. Dec. 670.) If the representations were made at any time before the delivery of the goods, and the plaintiffs relied on them, or they were one of the inducements to the sale, then it was voidable. It was error to admit testimony by defendant as to his purpose in making the statement at the time of compromise, whether it was to obtain credit or to deceive and defraud plaintiffs. This testimony was irrelevant and prejudicial. The introduction of it violates the fundamental rule that every one is presumed, conclusively, to intend the natural and necessary consequences of his own acts, at least when they are acted upon to the damage of another. But the intent with which the false representations are made is wholly immaterial as established by the following authorities. (*Reed* v. *Pinney*, 35 Ill. App. 610; *Case* v. *Ayers*, 65 Ill. 142; *Foster* v. *Charles*, 6 Bing. 396; *Keith* v. *Goldston*, 22 Ill. App. 457; *Gough* v. *St. John*, 16 Wend. 646; *Johnson* v. *Peck*, 1 Wood & M., 334.)

*Ashburn K. Barbour*, for Respondents.

The answer does not deny that Barker was insolvent at the time of making the representations; it denies the making of the representations set forth in plaintiff's complaint, and denies that they were false and fraudulent. The denial that the representations were false and fraudulent embraces the denial that Barker knew that they were false at the time of making them. In order to constitute fraud in the matter of the statement, the element of knowledge on Barker's part was essential. (*Stitt* v. *Little*, 63 N. Y. 427–31; *Brackett* v. *Griswold*, 112

N. Y. 467; *Plant* v. *Condit*, 22 Ark. 459; *Pettigrew* v. *Chellis*, 41 N. H. 95; *Morse* v. *Dearborn*, 109 Mass. 594; *Taylor* v. *Frost*, 39 Miss. 328; *Bond* v. *Clark*, 35 Vt. 577; *Shippen* v. *Bowen*, 48 Fed. Rep. 659.) The gist of this action is the false and fraudulent representations made by Barker. In order to recover, the plaintiffs must show that the statement: 1. Was made to them, or with the direct intention that it should be communicated to them, and that they should act upon it; 2. It must be false in fact; 3. It must be false to the knowledge of the defendant, or be made by him recklessly, etc.; 4. It must be a material representation; and 5. The plaintiffs must have acted upon the faith of it, and suffered damages. (Benjamin on Sales, rev. ed., § 694; *Arthur* v. *Griswold*, 55 N. Y. 405; *Morris* v. *Talcott*, 96 N. Y. 100; *Macullar* v. *McKinley*, 99 N. Y. 355; *Taylor* v. *Frost*, 39 Miss. 328; *Bond* v. *Clark*, 35 Vt. 577; *Morse* v. *Dearborn*, 109 Mass. 593; *Shippen* v. *Bowen*, 48 Fed. Rep. 659; *Stitt* v. *Little*, 63 N. Y. 427–31.) A representation false in fact gives no right of action if innocently made by a party who believes the truth of what he asserts. (Benjamin on Sales, §§ 679–89, inclusive.) This is a settled rule in England, and is concurred in both by the queen's bench and the exchequer. (*Evans* v. *Collins*, 5 Q. B. 820; *Ormrod* v. *Huth*, 14 Mees. & W. 650; *Dickson* v. *Reuters' Tel. Co.*, 3 Com. Pl. Div. 1.) False representations to avoid a contract must be made for the purpose of inducing the party complaining to enter into the contract, and must have been relied upon by him. (*Berringer* v. *Cobb*, 58 Mich. 557; *Humphrey* v. *Merriam*, 32 Minn. 197.) In an action to recover possession of goods sold and delivered to defendants, on the ground that the sale was induced by false and fraudulent representations made by them, the burden is upon the plaintiffs to establish that such representations were made with the intent to deceive and defraud. (*Coffin* v. *Hollister*, 124 N. Y. 644; *Rothschild* v. *Porter*, 19 N. Y. Supp. 177; *Morse* v. *Dearborn*, 109 Mass. 593.) In actions for false representations and deceit, it must be shown that the defendant knew the representations to be false at the time of making them. In other words, the *scienter*, as it is termed, must be

proved. (*Plant* v. *Condit,* 22 Ark. 459; *Pettigrew* v. *Chellis,* 41 N. H. 95.)

PEMBERTON, C. J.—This is an action for the recovery of the possession of personal property, and for damages for the alleged wrongful detention thereof.

The complaint alleges "that on the third day of January, 1891, at the city of Philadelphia, state of Pennsylvania, the defendant James W. Barker, for the purpose of inducing plaintiffs to sell him certain goods, represented to the plaintiffs that he was worth the sum of $7,800 over and above all debts and liabilities, and that he was indebted for borrowed money in the sum of $1,300 only, and that his total liabilities amounted to but $3,400, including $2,100 due for merchandise; that the plaintiffs were thereby induced and did sell and deliver to the defendant James W. Barker goods, wares, and merchandise of the value of $1,000; that said representations were false, and the said defendant James W. Barker was not worth at said time $7,800 over and above all his debts and liabilities, or any other sum whatever, but at said time was insolvent, and had not sufficient property with which to pay his debts, and these facts were then known by the said defendant to be so; that at the times said representations were made the said James W. Barker was indebted to the First National Bank of Helena, as plaintiffs are informed by the officers of said bank, in the sum of $3,134.43 and accrued interest, borrowed money; that he was then indebted to one E. H. Reynolds, as plaintiffs are informed by said Reynolds, in the sum of $500, or more, for borrrowed money, and that he was then indebted to the Thomas Cruse Savings Bank in the sum of $180, for borrowed money, all of which indebtedness the said James Barker then well knew"; that defendant Barker afterwards transferred a certain part of said goods, of the alleged value of $565 (which are described in the complaint) to defendant Davidson; that plaintiffs have demanded of said Davidson the possession of said goods; that he refused to deliver the same, and now unlawfully and wrongfully withholds and detains the same. Plaintiffs ask judgment for the possession of the goods, or their value, and $500 damages for

the detention thereof.    Defendant Barker does not answer, the cause having been dismissed as to him.    Defendant Davidson's answer denies all the material allegations of the complaint, and alleges affirmatively as follows:

"1. Upon information and belief, defendant alleges that the goods, wares, and merchandise sold and delivered by plaintiffs to defendant James W. Barker, as set forth in plaintiffs' complaint herein, were sold to said Barker in pursuance and in accordance with a certain agreement of settlement made and entered into by and between said plaintiffs and said James W. Barker on the second day of January, 1891.

"2. That, upon the second day of January, 1891, the said James W. Barker was indebted to plaintiffs in the sum of $4,575.99; that according to the terms of said agreement the said defendant James W. Barker was to pay the said plaintiffs, in cash, the sum of $2,728, and the remaining sum of $1,847.99 in five promissory notes, four of which said promissory notes were to be made for the sum of $350 each, and the fourth of said promissory notes was to be for the sum of $447.99; and that the plaintiffs thereupon agreed to sell, and did sell, to said Barker, upon said agreement, goods, wares, and merchandise of the value of $1,016.81, the said goods including the goods, wares, and merchandise mentioned in plaintiffs' complaint herein.

"3. That the said Barker, in pursuance of the terms of said agreement, did, on or about the —— day of February, A. D. 1891, pay to the said plaintiffs the sum of $2,728 in cash, and on the second day of January, 1891, did make, execute, and deliver to the said plaintiffs the four promissory notes as hereinabove mentioned and described; and that in pursuance of said agreement the said plaintiffs did ship and deliver said goods, wares, and merchandise to the said James W. Barker.

"4. And defendant alleges, upon information and belief, that said goods and merchandise were sold and delivered in pursuance of said agreement, and in consideration thereof, and not upon any representations or statements made by the said James W. Barker upon the third day of January, 1891, or at any other time or place, or upon any other statement."

The affirmative matter of this answer is denied by repli-

cation.  The case was tried by the court with a jury, and resulted in a verdict and judgment for the defendant.  Plaintiffs moved for a new trial, which was denied.  From the judgment and order denying a new trial this appeal is prosecuted.

It will be observed that the pleadings raise two issues: 1. Did Barker, by making said alleged false statement, induce the plaintiffs to sell him the goods involved in this controversy?  2. Were said goods sold by plaintiffs to said Barker under and in accordance with the agreement of compromise set up in the answer?

The appellant's principal contention in this court is, that the verdict of the jury in the court below is not supported by the evidence.  The statement made by Barker as to his financial condition, and alleged to be false, is in writing, dated January 3, 1891, and signed by himself, and is in evidence in the case, and is substantially as alleged in the complaint. R. B. Ellison, one of the plaintiffs, testifies that he sold the goods to Barker on the faith of said statement, believing it to be a correct statement of his financial condition, and that he would not have so sold the goods to him without said statement having been given.  His evidence supports the material allegations of the complaint.  Samuel W. Lambeth, who swears that he has been for thirty years an assistant in the collection and credit department of the plaintiffs' firm, testifies that he was present when Barker made and signed the said statement, and his evidence is substantially to the same effect as R. B. Ellison's.  These are the only witnesses on the part of plaintiffs to the facts attending the sale of the goods. Barker testifies that the goods in controversy were ordered by him in October or November, 1890, of John W. Moore, a salesman of the plaintiffs' firm; that at that time he ordered of said Moore $2,000 worth of goods; that he did not purchase them in fact in January, 1891, the date of said financial statement; that at the last date he changed the order he had given Moore in October or November, 1890, by cutting it down to the amount of $1,000, the amount mentioned in the complaint; that he did not purchase the goods in controversy under and by virtue of the financial statement made by him; that when he made said statement he was in Philadelphia, without his

books, or any *data* from which he could make a correct state-
ment; that he told the plaintiffs he could not make a correct
statement; that they insisted that he make it as best he could;
that no trouble would ever come of it; that it was the custom
of the firm; that prior to his making the statement he had
made a contract or agreement with plaintiffs, by which he had
compromised his indebtedness then existing to them at fifty
cents on the dollar, and for future credit; that the purchase
of the goods in controversy was completed as a result of said
compromise; that this compromise agreement was made on
the second day of January, 1891; that in pursuance and in
accordance with the terms thereof he paid plaintiffs $2,728
cash, executed and delivered to them his four promissory
notes, and delivered to them $25,000 in shares of mining
stock as security for said notes, and for future credit for
goods; that said goods were sold and delivered under and
in pursuance of said compromise, and not on account of said
financial statement; that said plaintiffs well knew his financial
condition on the second day of January, 1891, the date of said
statement, and prior thereto; that in December, 1890, Lam-
beth, witness for plaintiffs, the credit man of the plaintiff
firm, came to Helena to examine, and did examine, his finan-
cial condition; that Lambeth took an inventory or account of
his stock in Helena; that the compromise above mentioned
was entered into verbally with said Lambeth for said plaintiffs
at that time; that, in accordance therewith, he went to Canada
to raise the necessary money to carry out said compromise on
his part; that Lambeth was with him in Canada; that from
Canada they went to Philadelphia, where said compromise
agreement was reduced to writing, and signed by plaintiffs
and Barker; that said contract is in evidence in this case; that
the sale and delivery of the goods in controversy was the result
of said compromise, and was not induced, and did not in any
way result from, said financial statement mentioned in the
complaint; that plaintiffs have never returned, or offered to
return, the money paid, and the notes and mining stock, or
any part thereof, delivered by Barker in pursuance of said
compromise.   The evidence in relation to this compromise is
not disputed.   That Lambeth was in Helena in December,

1890, and examined the financial condition of Barker for plaintiffs, is not questioned.

It being undisputed that plaintiffs, after a full examination of Barker's condition, and with full knowledge thereof, in writing, compromised their claim against Barker at fifty cents on the dollar, and agreed to extend future credit on the second day of January, 1891, how can they now consistently say that they relied on his statement of his financial condition made at the same time, as they say, and were induced thereby to part with the goods in controversy? Lambeth, the credit man of the firm, knew Barker was insolvent. The very contract of compromise signed by the plaintiffs is a showing that Barker was insolvent at the date thereof. Do these circumstances and proofs not tend to show that plaintiffs did not rely upon the financial statement made by Barker as a controlling inducement to part with their goods? Do these facts and circumstances, taken in connection with Barker's evidence, not tend to show that the plaintiffs delivered and parted with their goods under and in accordance with the terms of the written agreement of compromise, and for future credit in evidence in this case? From these facts and circumstances, were not the jury authorized to believe and find that the goods were not obtained by fraud, as alleged in the complaint, but that they were delivered under the terms of the compromise between plaintiffs and Barker? We think so. We are therefore of the opinion that the contention of appellants that the verdict of the jury is not supported by the evidence is untenable.

The appellants assign other errors as to the instructions of the court and the admission of certain evidence. We have examined the instructions, and think they clearly and fairly declared the law governing the case. We think there was no error in admitting the evidence complained of. We are of opinion that the holding in regard to the sufficiency of the evidence to support the verdict is decisive of this appeal.

The order and judgment appealed from are affirmed.

*Affirmed.*

HARWOOD, J., concurs.